# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHY L. MCCLAIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-308-SPS |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Kathy L. McClain requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 10, 1960, and was fifty-two years old at the time of the most recent administrative hearing (Tr. 120, 127). She has an eighth grade education, and has worked as an apartment manager assistant, apartment house manager, and housekeeper (Tr. 54, 165). The claimant alleges she has been unable to work since November 15, 2011, due to restless leg syndrome, diverticulitis, and depression (Tr. 164).

## Procedural History

On January 19, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 120-32). Her applications were denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 2, 2014 (Tr. 13-24). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with occasional contact with co-workers and supervisors, but no work-related contact with the general public; frequent,

but not constant, handling and fingering with the right upper extremity; and a sit/stand option with no more than one change in position every half hour without leaving the workstation (Tr. 18). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, electrical assembler, plastic hospital product assembler, and small product assembler (Tr. 23).

## Review

The claimant contends that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ: (i) mischaracterized a portion of her testimony; (ii) failed to properly analyze the opinion of her treating physician, Dr. Nielson; (iii) failed to present a proper hypothetical to the vocational expert ("VE"); and because (iv) Dr. Schatzman's May 2012 opinion is not probative evidence of her manipulative functioning after March 2013. The Court agrees with the claimant's second contention.

The ALJ found that the claimant's depression, alcohol abuse, degenerative disc disease, and restless leg syndrome ("RLS") were severe impairments (Tr. 16). The relevant medical evidence reveals that Dr. Ronald Schatzman performed a physical consultative examination of the claimant on May 16, 2012, the results of which were normal (Tr. 427-33). On March 13, 2013, the claimant dislocated her right elbow, and fractured her right wrist when she fell from a ladder (Tr. 524). The claimant underwent surgery the following day, which included an open reduction and internal fixation of the radial head and distal radius, and a closed reduction of her elbow (Tr. 518-19). At a follow-up appointment on April 29, 2013, Dr. Nielson found reduced range of motion in

her elbow; normal supination and pronation in her wrist, but reduced flexion and extension; weakness in her grip and pinch; and tenderness over the first dorsal extensor compartment (Tr. 561). He noted the claimant's swelling in her elbow was "much improved," the swelling in her wrist was "down substantially," and that her distal radius "looked excellent." (Tr. 561). Dr. Nielson opined that the claimant probably had De Quervain's disease, and administered a steroid injection (Tr. 561).

At the administrative hearing, the claimant testified that her most significant limitation which prevents her from working was an inability to clean, which she described as "scrubbing and stuff." (Tr. 42). She further testified that her arm was swollen after she cleaned a house the week before, and that her arm swells the day after she cleans floors (Tr. 37, 49). She also stated her arm was getting worse rather than better, and that she thought one of her pins was coming out (Tr. 37). When asked if she had trouble dressing herself, the claimant replied that she could button her pants, and put on her bra, but that it takes her longer "to do stuff." (Tr. 38). As an example, she testified that she was trying to "pluck her eyebrows" the night before and was not able to, and then she said "just little things like that . . . you don't think about, that you can't do." (Tr. 38). She also stated she has a driver's license, but does not drive if she has taken her RLS medication because it disorients her (Tr. 38-39).

In his written opinion, the ALJ summarized the claimant's testimony, as well as the medical evidence. The ALJ assigned great weight to Dr. Schatzman's May 2012 opinion, and little weight to the State Agency physician's opinion that the claimant had no severe impairments, finding instead that her RLS and right arm impairment limited her

as stated in his RFC (Tr. 20-21).[2] He discussed some of Dr. Nielson's findings at step two, but did not mention or discuss any of his findings at step four, nor did he assign them any specific weight (Tr. 16).

The medical opinions of a treating physician such as Dr. Nielson are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship, (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

---

[2] The ALJ references a State Agency physician opinion, but does not cite to an exhibit in the record, and after a thorough review of the record, such opinion could not be located.

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. At step two, the ALJ noted that Dr. Nielson indicated the claimant's fracture was healing well, that her swelling was down, and that he found she had weakness in her grip (Tr. 16). The ALJ did not, however, mention or weigh Dr. Neilson's findings at step four, and entirely ignored that Dr. Neilson also found the claimant had weakness in her pinch, reduced range of motion in her elbow and wrist, and "probably" De Quervain's disease (Tr. 561). This was an improper assessment where, as here, the ALJ gave great weight to the opinion of a consultative examiner whose opinion pre-dated the claimant's injuries to her elbow and wrist, and failed to explain why the claimant's documented reduced range of motion in her elbow and wrist nevertheless enabled her to perform the jobs of electrical assembler (DICOT 729.687-010), plastic hospital product assembler (DICOT 712.687-010), and small product assembler (DICOT 706.684-022), with their attendant requirement of frequent reaching, handling, and fingering. The Commissioner argues that any error the ALJ made as to any limitations concerning the claimant's right upper extremity is harmless because such limitations do not meet the durational requirement of 20 C.F.R. §§ 404.1509, 416.909, however, this amounts to an improper post-hoc argument, as the ALJ made no attempt to disregard Dr. Nielson's opinion on this basis. *See Haga v. Astrue,* 482 F .3d 1205, 1207–08 (10th Cir.2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Because the ALJ failed to properly evaluate Dr. Nielson's opinions, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**